2023 NOV -9 PM 4:55
BY UW

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA )
v. ) Case No. 2:22-cr-00111
LEON DELIMA, )
Defendant. )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM THE SEPTEMBER 15, 2022 WARRANT AND THE OCTOBER 31, 2022 WARRANT AND ORDERING SUPPLEMENTAL BRIEFING REGARDING THE FEBRUARY 24, 2023 WARRANT**
(Doc. 30)

Pending before the court is Defendant Leon Delima's motion to suppress evidence obtained from a September 15, 2022 search warrant (the "9/15/22 Warrant"), an October 31, 2022 search warrant (the "10/31/22 Warrant"), and a February 24, 2023 search warrant (the "2/24/23 Warrant"). (Doc. 30.) In addition to seeking the suppression of all evidence obtained as a result of the warrants, he seeks an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) because the affidavit in support of the 9/15/22 Warrant allegedly contains false or misleading statements and omissions.

Mr. Delima is charged in a two-count Indictment with knowingly possessing in and affecting commerce a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 1), and knowingly and intentionally possessing with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C) (Count 2).

The government is represented by Assistant United States Attorney Eugenia A. Cowles. Mr. Delima is represented by Assistant Federal Public Defender Sara M. Puls.

## I. Procedural History.

Mr. Delima filed the pending motion on July 13, 2023, and the government opposed the motion on August 3, 2023. (Doc. 39.) Mr. Delima did not file a reply. The

court held an evidentiary hearing on August 7, 2023, regarding another motion filed by Mr. Delima. The government filed a supplemental memorandum addressing the pending motion on August 22, 2023. (Doc. 45.) The court held an evidentiary hearing on this motion on September 19, 2023. Mr. Delima filed a supplemental memorandum on September 25, 2023. (Doc. 53.) The government filed a response on September 28, 2023 (Doc. 54), at which time the court took the pending motion under advisement.

## II. Findings of Fact.

The court finds the following facts by a preponderance of the evidence.

### A. The 9/15/22 Warrant / Cell Phones 1 and 2.

On July 2, 2022, Burlington Police Department ("BPD") officers arrested Mr. Delima. During the encounter, officers seized two bags of suspected cocaine and two Apple iPhones from Mr. Delima's pockets, one in a camouflage patterned "BAPE" brand case ("Cell Phone 1"), and one in a black "Otterbox" brand case ("Cell Phone 2").[1] Mr. Delima was charged with felony cocaine possession and reckless endangerment in state court.

On September 15, 2022, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agent Samuel Brown ("Agent Brown") applied for and obtained a warrant to search Cell Phones 1 and 2 for evidence of acquisition or possession of ammunition or firearms from March 1, 2021 to September 15, 2022, acquisition or distribution of controlled substances from June 30, 2022 to September 15, 2022, and communications made or received on July 2, 2022.

The 9/15/22 Warrant affidavit includes the following information:

- On July 2, 2022 at around 10:12 p.m., BPD officers responded to a 911 call in Burlington, Vermont after a report of a firearm discharge in the area of 300 North Avenue. The 911 caller reported that he believed the firearm was a 9mm handgun. BPD stopped an individual later identified as Mr. Delima.
- A BPD officer conducted a pat-down of Mr. Delima's person. The BPD officer removed various items from Mr. Delima's shorts pocket, including Cell Phone

[1] Doc. 39 refers to Cell Phone 1 as "the fanny pack phone" and Cell Phone 2 as "the pocket phone." The parties now agree that BPD found both phones on Mr. Delima's person. Cell Phones 1 and 2 bear ATF evidence numbers 2764105 and 2764107, respectively.

2 and two bags containing what appeared to be powder cocaine and cocaine base. The "suspected narcotics" were "later weighed" and "field tested positive for cocaine." (Government "Gov't" Ex. 9 at 4, ¶ 6.)[2] The "powdery substance" weighed "approximately 23.3 grams[,]" while the "white, rock-like substance" weighed "approximately 11.7 grams[.]" *Id.* Agent Brown spoke with a Drug Enforcement Administration special agent (the "DEA agent") who stated that "in his opinion, the quantities in both bags were consistent with distribution amounts of narcotics." *Id.*

- At the time of the stop, Mr. Delima had "ear length hair braids" and was wearing "BAPE" brand clothing. *Id.* at ¶ 7.
- Officers conducted a canvass of the area and found three .40 caliber shell casings "between 204 and 208 North Avenue."[3] *Id.* at 5, ¶ 8. "On the corner of North Avenue and Crowley Street," they found a "BAPE" brand fanny pack containing a firearm holster, Cell Phone 1, and $3,290 in U.S. Currency. *Id.*
- On July 13, 2022, BPD officers responded to a report of a firearm found at 230 North Avenue, which an individual discovered after she "ran over" it while mowing the grass. (Gov't Ex. 9 at 6, ¶ 9.) Officers located the firearm "at the edge of the grass behind a hedge approximately five feet from the North Avenue sidewalk." *Id.* The firearm was a Heckler & Koch .40 caliber pistol that law enforcement determined was stolen from Shelburne, Vermont in 2019. The fanny pack was located "approximately 200 feet[,]" the firearm "approximately 400 feet[,]" and the shell casings "approximately 1,400 feet" from where Mr. Delima "was encountered by officers on July 2." *Id.*
- On July 19, 2022, Agent Brown took custody of the firearm, discharged test shots, and submitted the test-fired casings for review to the National Integrated Ballistic Information Network ("NIBIN"). On August 31, 2022, Agent Brown reviewed a NIBIN report which determined that the test-fired casings matched the casings collected on July 2, 2022.
- On September 1, 2022, Agent Brown collected evidence from BPD which included Cell Phones 1 and 2.
- On September 2, 2022, Agent Brown compared the recovered firearm to the firearm holster found in the fanny pack and "determined the two fit together seemingly as a pair." *Id.* at ¶ 11.
- Agent Brown investigated Mr. Delima's criminal history and determined that

[2] The government provided exhibits 1-15 with Doc. 39, exhibit 16 in the August 7, 2023 evidentiary hearing, and exhibits 1-7 for the evidentiary hearing on September 19, 2023. Exhibits cited from the latter include an "a" next to the exhibit numeral in the citation.

[3] The affidavit does not provide a date for this canvass, but other evidence establishes it occurred on July 2, 2022. (*See* Gov't Ex. 7a at 16.)

he had been convicted of four felonies.

- Agent Brown's affidavit does not include "all [his] knowledge about this matter." *Id.* at 2, ¶ 3.

**B. ATF Obtains Cell Phones 1 and 2.**

BPD logged Cell Phones 1 and 2 as evidence but did not describe their seizure in BPD narrative reports regarding the July 2, 2022 incident. The evidence logs for Cell Phones 1 and 2 includes the words "Do Not Release" in the "Action" section of the interface. (Gov't Ex. 7a at 23-24; *see also* Gov't Ex. 16.) The evidence log for Mr. Delima's vehicle keys, lighter, and marijuana states "Release" in the "Action" section. (Gov't Ex. 7a at 25.) In an exhibit depicting another version of the evidence log for the vehicle keys, lighter, and marijuana evidence, the "Remarks" section states "Hardcopy property log shows item logged out on this date and time by 968." (Gov't Ex. 12.)

Agent Brown sought BPD's evidence on September 1, 2022 after he concluded that the case "would in fact go federal[.]" (Transcript "Tr." at 14.) In the evidentiary hearing on September 19, 2023, he credibly testified that he did not review the evidence log before he went to pick up the evidence from BPD but admitted "[h]ad [he] checked the log, [he] would have seen [the cell phones logged]." *Id.* at 44. Because of "this very case[,]" Agent Brown stated that he now generally reviews the evidence log "as soon as [he's] informed of a case[.]" *Id.* at 43-44.

On September 26, 2022, Agent Brown submitted a report to ATF which indicated that Cell Phone 1 placed outgoing calls at 10:05 p.m. and 10:12 p.m. on July 2, 2022, lasting approximately four minutes and three minutes, respectively. (Defendant's Ex. W at 2.) The report also notes that Agent Brown reviewed a video of Mr. Delima leaving North Beach in Burlington on July 2, 2022.

**C. The 10/31/22 Warrant / Cell Phone 3.**

On October 13, 2022, Mr. Delima was indicted by a federal grand jury for violations of 18 U.S.C. § 922(g)(1) and 21 U.S.C. §§ 841(a), 841(b)(1)(C). On October 14, 2022, BPD officers arrested Mr. Delima and seized a third cell phone ("Cell Phone 3"), an AT&T Apple iPhone 13 Pro Max.

On October 31, 2022, Agent Brown applied for and obtained a warrant to search Cell Phone 3 for evidence of acquisition or possession of ammunition or firearms, acquisition or distribution of controlled substances, and communications made or received on July 2, 2022. The temporal scope of the data subject to the 10/31/22 Warrant was June 1, 2022 to July 6, 2022.

Agent Brown's affidavit in support of probable cause for the 10/31/22 Warrant includes the information set forth in his 9/15/22 Warrant affidavit as well as the following additional information:

- On October 12, 2022, law enforcement officers surveilled Mr. Delima in preparation for the arrest warrant. Officers observed Mr. Delima drive in the area around "Simon's Downtown gas station" in Burlington, Vermont. (Gov't Ex. 10 at 3, ¶ 6.) Agent Brown averred that "is an area known to be commonly used by drug distributors and buyers to conduct exchanges." *Id.*
- On October 13, 2022, a grand jury indicted Mr. Delima for violations of 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 841(a)(1).
- On October 14, 2022, law enforcement arrested Mr. Delima and seized Cell Phone 3 which had slipped out of his pocket. An ATF agent confirmed with Mr. Delima that Cell Phone 3 was his property.
- When Mr. Delima reached the BPD station, law enforcement took custody of $1,160 in U.S. Currency found on his person. BPD then transported Mr. Delima to Northwest State Correctional Facility.
- On October 27, 2022, Agent Brown reviewed toll records and subscriber information for Cell Phones 2 and 3 from AT&T. "[S]ome of [these records] were received after [Mr.] Delima's federal arrest." *Id.* at 4, ¶ 9. These showed Cell Phones 2 and 3 were associated with the same telephone number, both billed to Mr. Delima, and shared the same billing account number and address. "[T]the IMSI [of Cell Phone 3] (a number used by phone companies to locate a specific phone in the system) changed on July 6, 2022." *Id.* at 5, ¶ 9. Agent Brown averred that "[t]his is consistent with law enforcement seizing [Cell Phone 2] on July 2, 2022 and [someone] 'porting' the number to [Cell Phone 3.]" *Id.*
- Agent Brown received the call frequency lists for Cell Phones 1 and 2 which indicated the following: June 1, 2022 to July 2, 2022 for Cell Phone 2 and July 3, 2022 to October 17, 2022 for Cell Phone 3. Cell Phones 2 and 3 shared six callers in their "top fifteen" lists, including two individuals whom Agent

Brown averred had narcotics distribution convictions. *Id.* at ¶ 10.

- Agent Brown averred that people who traffic in firearms, people who commit crimes together, and people involved in controlled substances trafficking may have relevant information on their cell phones. In addition, he stated that people who distribute controlled substances often carry firearms, and their cell phones may have evidence of unlawful firearm possession.
- Agent Brown averred that: "When people get a new phone, generally information from the old phone is transferred to the new phone and thus information from a number of prior phones could be located on the most current phone. In this case, where the [telephone] number for [Cell Phone 3] appears to have been transferred from [Cell Phone 2] shortly after law enforcement seized [Cell Phone 2], [he] believe[s], based on [his] training and experience, that information from [Cell Phone 2], including information pertaining to [Mr.] Delima's gun and drug activities prior to his July 2, 2022 encounter with law enforcement, will be on [Cell Phone 3]." *Id.* at 6, ¶ 11(b).

**D. The 2/24/23 Warrant / Cell Phone 2.**

On or about February 24, 2023, Agent Brown applied for and obtained the 2/24/23 Warrant, which expanded the temporal scope of the data to be searched for on Cell Phone 2 to a date range of June 5, 2019 to September 15, 2022. His affidavit in support of probable cause for the 2/24/23 Warrant includes his 9/15/22 Warrant affidavit information as well as the following additional information:[4]

- On September 19, 2022, an ATF agent sent Cell Phone 2 to ATF's Digital Forensic Branch for "a full [data] extraction[]" because "[a] full data extraction was not possible at the field level[.]" (Gov't Ex. 11 at 3, ¶ 7.) On January 19,

[4] In its briefing, the government identifies evidence found on Cell Phones 1 and 2 not mentioned in the 2/24/23 Warrant affidavit including the following: "communications identifying the phone as belonging to Leon Delima; text messages from July 2, 2022 indicating potential drug activity; photographs and a search history from June and July 2022 related to firearms; messages indicating [Mr.] Delima would be at North Beach on the afternoon and evening of July 2, 2022 (the location from which he walked to the North Avenue shooting location); phone calls at approximately 10:02 [p.m.] (the time at which the [911] caller reported an individual shooting a firearm while on his cellular phone); and location information showing [Mr.] Delima's path of travel from North Beach to North Avenue at approximately 10:00 [p.m.], and along North Avenue until he was stopped by BPD at 10:16 [p.m.]" (Doc. 39 at 2-3.) The government asserts that Cell Phone 2 contained the following additional information: "a video from July 2, 2022 at 2:23 [p.m.] taken at or near North Beach showing [Mr.] Delima in the ['BAPE' brand] shirt, shorts, and headband with a matching fanny pack; and location data showing [Mr.] Delima on Institute Drive in Burlington at approximately 9:55 [p.m.] on July 2, 2022." *Id.* at 3. As this information is not in Agent Brown's affidavit, the court does not consider it.

2023, the ATF Digital Forensic Branch returned Cell Phone 2 with "a full extraction" to ATF Special Agent Matthew Elkstrom ("Agent Elkstrom"), who "provided [Agent Brown] with a report." *Id.*

- On February 3, 2023, Agent Brown reviewed the report and reviewed photos in the Cellebrite Reader application ("Cellebrite").
- Messages established that Mr. Delima used Cell Phone 2 during the time period authorized by the 9/15/22 Warrant. For example, on June 11, 2021, Cell Phone 2 texted a contact listed as "Gun" the following information: "Leon delima[,]" 5/31/88, and delimaleon92@gmail.com. *Id.* at 4, ¶ 8.
- On June 3, 2022, Mr. Delima exchanged calls and text messages with a contact regarding two photographs of a Ruger-5.7 pistol. Mr. Delima texted the contact: "bring it[.]" *Id.* at ¶ 9. On July 1, 2022, Mr. Delima searched "ruger 57" on the internet. *Id.*
- "[I]n plain view in the image section" of Cellebrite, Agent Brown saw a photograph "without an attached date[]" depicting four pistols, including a firearm resembling the Heckler & Koch pistol recovered in connection with the July 2, 2022 incident (the "Firearms Photograph"). *Id.* at 4-5, ¶ 10.
- Agent Brown was aware that the recovered firearm was reported stolen from Shelburne, Vermont on June 7, 2019. Agent Brown discovered that the Firearms Photograph had been uploaded to Cell Phone 2 on July 25, 2019.
- Because the upload date for the Firearms Photograph was outside of the scope of the 9/15/22 Warrant, Agent Brown sought a search warrant with an expanded date range.

During the court's evidentiary hearing on September 19, 2023, Agent Brown credibly testified that the "phone dump" from the ATF Digital Forensic Branch included all of Cell Phone 2's data. (Tr. at 24.) He stated that the image section of Cellebrite "does[] [not] initially sort it by dates[,]" and he did not recall whether he had used a sorting feature to create a date range as required by the 9/15/22 Warrant. *Id.* at 25. When asked if there are "any other precautions that [he] take[s] to make sure [he is] not going outside the bounds of the dates on the search warrant[,]" Agent Brown responded "[n]one that come to mind." *Id.* at 45-46. Agent Brown explained that, since the Firearms Photograph did not have an associated date, "even if [he] had sorted by a date, [he believed] it still would have been . . . in that group that [he] would have been seeing." *Id.* at 25. He determined the date of the Firearms Photograph by determining "that the photo

came to the phone on a particular date . . . [as in it was] sent or received or taken." *Id.*

## III. Conclusions of Law and Analysis.

Mr. Delima asks the court to suppress all evidence recovered from Cell Phones 1, 2, and 3 because he alleges a search of them violated the Fourth Amendment. He argues that the evidence derived from the 9/15/22 Warrant must be suppressed because the affidavit in support of the warrant contains numerous material omissions and inaccuracies, fails to establish probable cause, and law enforcement unreasonably delayed in applying for it. Mr. Delima requests a *Franks* hearing regarding this warrant.

Mr. Delima moves to suppress evidence obtained from the 10/31/22 Warrant because it incorporates the allegedly invalid 9/15/22 Warrant information, the supporting affidavit fails to establish probable cause, and law enforcement unreasonably delayed in applying for it.

Finally, Mr. Delima contends that evidence from the 2/24/23 Warrant must be suppressed because it incorporates the allegedly invalid 9/15/22 Warrant information, was based on allegedly illegally obtained evidence, and does not establish probable cause without that evidence.

### A. Whether Mr. Delima is Entitled to a *Franks* Hearing and Suppression of the Evidence Obtained Pursuant to the 9/15/22 Warrant Because of a Lack of Probable Cause.

A search warrant affidavit enjoys "a presumption of validity[,]" *Franks*, 438 U.S. at 171, but "in certain circumstances a defendant is entitled to a hearing to test the veracity of the affiant's statements." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (citation omitted).

To overcome the presumption of validity,

> a defendant must make "a substantial preliminary showing" of (1) falsity, "that a false statement . . . was included by the affiant in the warrant affidavit," (2) knowledge, that the affiant made the allegedly false statement "knowingly and intentionally, or with reckless disregard for the truth," and (3) materiality, that "the allegedly false statement is necessary to the finding of probable cause."

*United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023) (ellipses in original) (citing

*Franks*, 438 U.S. at 155-56). A defendant must meet this standard by "a preponderance of the evidence[.]" *United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008), *cert. denied*, 555 U.S. 1061 (2008).

"The *Franks* standard is a high one[.]" *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991).

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171.

*Franks* applies to "omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate [judge]." *United States v. Awadallah*, 349 F.3d 42, 68 (2d Cir. 2003) (emphasis omitted) (quoting *United States v. Colkley*, 899 F.2d 297, 300-01 (4th Cir. 1990)). Omissions, however, are less likely to meet the *Franks* standard, as "[p]olice officers applying for search warrants are not required to provide a magistrate [judge] with all the information in their possession." *United States v. Liberti*, 616 F.2d 34, 37 (2d Cir. 1980), *cert. denied*, 446 U.S. 952 (1980). Nonetheless, "while an affiant need not provide every fact that arguably cuts against the existence of probable cause, he or she must not omit circumstances that are critical to its evaluation." *United States v. Hester*, 2020 WL 3483702, at *19 (S.D.N.Y. June 26, 2020) (internal quotation marks and citation omitted).

To determine whether an alleged misstatement or omission was material to the finding of probable cause, the court must engage in a process of subtraction and "set aside any falsehoods in the application and determine whether the untainted portions of the application are sufficient to support a finding of probable cause." *United States v. Discala*, 2023 WL 4118637, at *3 (2d Cir. June 22, 2023). The court then engages in "a

process of addition[,]" *United States v. Nakouzi*, 2005 WL 3211208, at *6 (D. Conn. Nov. 30, 2005), and "insert[s] the omitted truths[.]" *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (internal quotation marks omitted) (quoting *United States v. Ippolito*, 774 F.2d 1482, 1487 n.1 (9th Cir. 1985)).

"The ultimate inquiry is whether, after putting aside erroneous information and [adding] material omissions, 'there remains a residue of independent and lawful information sufficient to support probable cause.'" *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (quoting *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir. 1985)). "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no [*Franks*] hearing is required." *Franks*, 438 U.S. at 171-72 (footnote omitted). Correspondingly, if "the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156.

The probable cause determination "is not overly strict." *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005). A judge:

> make[s] a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). The inquiry "turns on an 'assessment of probabilities' and inferences, not on proof of specific criminal conduct beyond a reasonable doubt or even by a preponderance of the evidence." *Martin*, 426 F.3d at 76 (quoting *Gates*, 462 U.S. at 235).

Probable cause is "demonstrated where the totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)). It is "a fluid

concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. "[T]he duty of a reviewing court is simply to ensure that the magistrate [judge] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

Mr. Delima identifies the following portions of the 9/15/22 Warrant affidavit that he contends contain false or misleading information or omissions material to probable cause: the location of evidence, the firearm evidence, the cocaine obtained from his shorts pocket, the 911 caller's reliability, the location of Cell Phone 1, and the delay in seeking the warrant.

**1. Challenge to the Location of Evidence.**

Mr. Delima argues the following alleged misrepresentations are material because they increase the likelihood that he was associated with the recovered firearm:

- The affidavit states that law enforcement found the fanny pack "[o]n the corner of North Avenue and Crowley Street[.]" (Gov't Ex. 9 at 5, ¶ 8.) Mr. Delima asserts that law enforcement found the fanny pack "two houses farther north" in a driveway. (Doc. 30 at 24.)
- The affidavit states that law enforcement found three .40 caliber shell casings "between 204 and 208 North Avenue[,]" (Gov't Ex. 9 at 5, ¶ 8), which Mr. Delima notes "incorrectly" places the evidence "a few feet" from where he was "first encountered" and "near where the fanny pack was found." (Doc. 30 at 24.) Mr. Delima asserts that the shell casings were found "much farther away" at 375 North Avenue. *Id.*
- The affidavit states that the fanny pack was located "approximately 200 feet[,]" the firearm "approximately 400 feet[,]" and the shell casings "approximately 1,400 feet" from where law enforcement "encountered" Mr. Delima. (Gov't Ex. 9 at 6, ¶ 9.) Mr. Delima asserts that these distances are incorrect, noting that the shell casings were found "closer to 2,100 feet" from where he encountered law enforcement. (Doc. 30 at 24.)

Mr. Delima does not explain how his revised measurements were determined. As the government points out, each of the contested locations was within Mr. Delima's path of travel after he was first spotted walking on North Avenue. It is Mr. Delima's path of travel rather than the precise location of his arrest which is material because, at the time

of his arrest, Mr. Delima did not possess either a firearm or shell casings. Law enforcement thus suspected he discarded incriminating evidence prior to their encounter with him. The measurements Mr. Delima challenges are mere approximations of where that evidence was found. Any discrepancies are not so great as to rise to the level of "materially misleading" information. *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987); *see also United States v. Walker*, 534 F.3d 168, 171 (2d Cir. 2008) ("In general, minor errors in an affidavit are not cause for invalidating the warrant that it supports.").

**2. Challenge to the Firearm Evidence.**

Mr. Delima argues that the affidavit for the 9/15/22 warrant "presents the arrest of Mr. Delima as a more unified event than it was" because it does not explain that BPD could see Mr. Delima had no weapon in his hand, and a BPD officer did not find one when he patted down Mr. Delima's person and clothing. (Doc. 30 at 25.)[5]

Mr. Delima contests the accuracy of the following statement:

- The affidavit states that law enforcement found the firearm "at the edge of the grass behind a hedge approximately five feet from the North Avenue sidewalk." (Gov't Ex. 9 at 6, ¶ 9.) Mr. Delima contends the firearm was found "in plain sight . . . in an area searched three times by law enforcement" and not obscured by a hedge. (Doc. 30 at 18.)

A photograph of the firearm depicts its location "next to a large bush, behind some plants, and in the grass[.]" (Doc. 39 at 9; *see* Gov't Ex. 4a.) The firearm was sufficiently hidden that it was not found until an individual mowing the grass "ran over" it. (Gov't Ex. 9 at 6, ¶ 9.) In these circumstances, the description of the firearm's location was reasonably accurate.

Mr. Delima also contests the following omissions:

- The affidavit omits that law enforcement conducted searches for the firearm on

[5] In his briefing, Mr. Delima points out that affidavit omits that the 911 caller described a 9mm caliber weapon, and the firearm recovered on July 13, 2022 was a .40 caliber weapon. The government counters that the 9/15/22 affidavit included statements that the 911 caller "believed [the firearm] was a 9mm handgun[,]" (Gov't Ex. 9 at 3, ¶ 5), but acknowledges that the recovered firearm was a ".40 caliber pistol[.]" *Id.* at 6, ¶ 9. Mr. Delima has withdrawn this challenge to this alleged misrepresentation.

July 2, 2022, July 3, 2022,[6] and July 5, 2022 before finding it on July 13, 2022.[7]

- The affidavit omits that the recovered firearm was a Heckler & Koch brand, while the 911 caller heard the suspect speaking about a Glock on his cell phone.
- The affidavit omits that the 911 caller stated that he overheard the suspect claim he had three unspent rounds, while the recovered firearm contained no unspent rounds.
- The affidavit omits that BPD did not find any fingerprints on the recovered firearm.

In his 9/15/22 Warrant affidavit, Agent Brown advised the court that he did not include all facts known to him. He was "not required to provide a magistrate [judge] with all the information in [his] possession." *Liberti*, 616 F.2d at 37. There is also no requirement that a search warrant affidavit include all exonerating evidence,[8] provided the affidavit does not exclude information critical to the probable cause analysis. Law enforcement is also not required to detail "unproductive or unsuccessful efforts in the course of the investigation." *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993).

Adding the omitted information, it remains true that law enforcement found a firearm and shell casings near the location of Mr. Delima's arrest and along his path of travel. The alleged misstatement and the alleged omissions thus do not alter the probable cause determination.

**3. Challenge to the Cocaine Obtained from Mr. Delima's Shorts Pocket.**

Mr. Delima argues the cocaine found in his shorts was for "individual use." (Doc.

[6] During the July 3, 2022 canvass, law enforcement recovered an additional shell casing found by a member of the public near their search area. *See* Defendant's Ex. T. This event is not reflected in the 9/15/22 Warrant affidavit.

[7] The affidavit states that the firearm was found on July 13, 2022, and discusses a July 2, 2022 canvass of the area at the time of Mr. Delima's arrest.

[8] *See Seigel v. City of Germantown*, 2001 WL 1563651, at *1 (6th Cir. 2001) ("Because the consequences of a search are less severe than those of an adverse criminal verdict, there is no requirement to include exculpatory evidence in a search warrant affidavit.") (citing *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998)).

30 at 27.) He contends the following omissions are misleading:

- The affidavit omits that the cocaine found in Mr. Delima's shorts pockets was not individually packaged.
- The affidavit omits that law enforcement determined the weight of the cocaine without removing its packaging.

Agent Brown's affidavit describes the seizure of two bags of suspected cocaine and includes a DEA agent's belief that "the quantities in both bags were consistent with distribution[.]" (Gov't Ex. 9 at 4, ¶ 6.) The affidavit also states that the cocaine weights were "approximate[,]" *id.*, and does not indicate whether they were with or without packaging. Any minor discrepancies do not defeat probable cause because the affidavit does not provide false or misleading information about either the cocaine's quantity or packaging.

**4. Challenge to the 911 Caller's Reliability.**

Mr. Delima contends the 911 caller's reliability has not been established and it is undermined by the following:

- The affidavit omits that the 911 caller refused to meet in person with law enforcement and could not provide a precise description of the suspect, stating: "I couldn't pick [the shooter] out of a line-up, unless he's wearing exactly the same clothes he was." (Defendant's Ex. F.)
- The affidavit omits that the 911 caller stated that Mr. Delima's hair was short with no braids, "[m]aybe an inch on top . . . [i]f that[,]" while Mr. Delima had braided hair that fell beneath his ears. *Id.*[9]

The 911 caller identified himself by name and date of birth and provided his telephone number and location. Although the 911 caller was unwilling to appear in person at the police station because he had been drinking and was watching a pay-per-view program, he agreed to provide a sworn and recorded statement over the phone regarding his personal observations. *See United States v. Rollins*, 522 F.2d 160, 164 (2d Cir. 1975) (observing that the Supreme Court and Second Circuit "have recognized

---

[9] Mr. Delima contends that "[t]he 911 caller agreed . . . during a September 13, 2022 deposition that the hair was maybe an inch long, but '[n]o braids or anything like that.'" (Doc. 30 at 18, citing Bates 36.) A transcript of this deposition was not provided to the court.

personal observation as a reliable basis for an informant's report"). Based on these facts, this court has previously found that there was a reasonable basis for law enforcement to credit the 911 caller's statements. *See United States v. Delima*, 2023 WL 6609328, at *8 (D. Vt. Oct. 10, 2023) ("[T]he totality of the circumstances [including the 911 caller's statements] provided the BPD officers with a reasonable, articulable basis for suspecting that Mr. Delima may have been responsible for the reported gunshots on North Avenue[.]").[10]

With regard to Mr. Delima's hairstyle, the 911 caller's description of Mr. Delima's hair is a reasonable approximation, especially because Mr. Delima was wearing a headband that lifted his hair at the time of his first arrest. (*See* Defendant's Ex. Y.) These are not the types of "omissions that are designed to mislead" and were not material to the probable cause determination. *Awadallah*, 349 F.3d at 68 (emphasis omitted).

**5. Location of Cell Phone 1.**

Mr. Delima challenges the admissibility of Cell Phone 1 because the affidavit falsely indicates it was found in the fanny pack. It is undisputed that BPD removed Cell Phone 1 from Mr. Delima's shorts pocket. The erroneous statement that Cell Phone 1 was found in an abandoned fanny pack reflects a more remote connection with Mr. Delima than an item found on his person. It thus provides more, not less, incriminating evidence against him. *See Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005)

---

[10] *See also United States v. Elmore*, 482 F.3d 172, 180, 182 (2d Cir. 2007) (stating "[t]he veracity of identified private citizen informants (as opposed to paid or professional criminal informants) is generally presumed in the absence of special circumstances suggesting that they should not be trusted[]" and concluding 911 caller that identified himself by name and date of birth, disclosed his present location, and provided a phone number had provided "enough information about [him]self to allow [the police] to identify [him] and track [him] down later to hold [him] accountable if [his] tip proved false" and was reliable); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (observing the Second Circuit has "endorsed the proposition that an identified citizen informant is presumed to be reliable" and "'a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated' is especially significant in establishing probable cause.") (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000)) (internal quotation marks, alteration, and citation omitted); *United States v. Salazar*, 945 F.2d 47, 50-51 (2d Cir. 1991) (stating face-to-face informant is more trustworthy than anonymous informant "for the former runs the greater risk that he may be held accountable if his information proves false").

("Possession by a person is prima facie evidence of some kind of rightful ownership or title.") (citing *Northern Pac. R. Co. v. Lewis*, 162 U.S. 366, 372 (1896)) (internal quotation marks omitted). This "innocent mistake" is "insufficient" to trigger a *Franks* hearing. *Franks*, 438 U.S. at 171.

**6. Delay in Seeking the Warrant.**

Mr. Delima challenges the delay in seeking the 9/15/22 Warrant as an issue of probable cause as well as one under *United States v. Smith*. He identifies the following omissions:

- The affidavit omits that Mr. Delima asked BPD to return the cell phones on July 5, 2022. Mr. Delima argues that this omission impacted the magistrate judge's opinion regarding law enforcement's delay in seeking the warrant.
- The affidavit states that Agent Brown took custody of the firearm on July 19, 2022. Mr. Delima alleges that the affidavit omits that ATF was involved in this case "from its inception[,]" with ATF Agent Brimo joining the canvass for the firearm on July 5, 2022, Agent Brown assisting in interviewing neighbors on July 6, 2022, and ATF running Mr. Delima's "rap sheet" on July 6, 2022. (Doc. 30 at 19.) He argues that these are material omissions because they weigh "strongly against any conclusion that the delay in seeking the warrant was reasonable[,]" *id.* at 23, and with the information included in the affidavit, "it would have been apparent to the magistrate [judge] that there was no justification for the delay." *Id.* at 27.

Staleness of the information contained in a search warrant affidavit may defeat probable cause. "While there is no bright line rule for staleness, the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993). Here, the challenge is to the delay in seeking a warrant and the reasons for that delay, not the staleness of the affidavit's contents. In that respect, the issue is more properly addressed as one of unreasonable delay and not as a misleading or false statement.

Because none of the alleged misstatements and omissions cited by Mr. Delima constitute a "substantial preliminary showing" justifying a *Franks* hearing, Mr. Delima's

request for a *Franks* hearing pertaining to the 9/15/22 Warrant is DENIED. *Franks*, 438 U.S. at 155; *see also Levasseur*, 816 F.2d at 43 (denying a *Franks* hearing when "the majority of alleged deficiencies . . . were too insignificant to suggest that [the affiant] had deliberately falsified information or shown a reckless disregard for the truth").

**B. Whether Mr. Delima is Entitled to Suppression of the Evidence from the 10/31/22 Warrant Based on a Lack of Probable Cause.**

Mr. Delima argues that the 10/31/22 Warrant affidavit failed to establish probable cause to search Cell Phone 3 for evidence of cocaine possession or distribution and ammunition or firearm evidence because it "does no more than . . . t[ie] Mr. Delima to illegal activity by virtue of his presence in a certain area and by his telephone calls to two individuals who have drug convictions." (Doc. 30 at 30.)

The 10/31/22 Warrant affidavit describes how on October 12, 2022 law enforcement officers surveilled Mr. Delima in "an area known to be commonly used by drug distributors and buyers to conduct exchanges." (Gov't Ex. 10 at 3, ¶ 6.) "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime[,]" *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), much less to establish probable cause. Excluding this statement, the remainder of the affidavit provides the following information in support of probable cause:

- Information from the 9/15/22 Warrant affidavit, which includes the 911 caller's initial report and sworn statement, the recovery of two cell phones, distribution amounts of cocaine from Mr. Delima's shorts pocket, a firearm, shell casings, and a firearm holster along Mr. Delima's path of travel. The affidavit also establishes a match between the recovered firearm and the holster, states that Mr. Delima's clothing and the fanny pack were both "BAPE" brand, and describes the locations of the recovered evidence.
- On October 13, 2022, Mr. Delima was indicted by a grand jury for violations of 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 841(a)(1).
- On October 14, 2022, Mr. Delima was arrested, and BPD officers seized Cell Phone 3 and $1,160 in U.S. Currency.
- Cell Phone 2 and Cell Phone 3 shared the same telephone number as well as billing information connected to Mr. Delima. Mr. Delima appeared to have

"port[ed]" his telephone number from Cell Phone 2 to Cell Phone 3. (Gov't Ex. 10 at 5, ¶ 9.)

- Cell Phone 2 and Cell Phone 3 shared callers in common, including individuals with narcotics convictions.
- Agent Brown's knowledge that users often transfer data from an old cell phone to a new cell phone, so Cell Phone 3 would likely have "information from [Cell Phone 2], including information pertaining to [Mr.] Delima's gun and drug activities prior to his July 2, 2022 encounter[.]" *Id.* at 6, ¶ 11(b).
- Agent Brown's knowledge that people who traffic in firearms often have information about their firearms on their cell phones, and cell phones may contain other evidence related to crimes.

Because the 10/31/22 Warrant affidavit provides a sufficient basis to conclude that Cell Phone 3 would contain similar information to that contained on Cell Phone 2, there remained "a fair probability that contraband or evidence of a crime" would be found on Cell Phone 3. *Gates*, 462 U.S. at 238. The court thus DENIES Mr. Delima's motion to suppress the evidence obtained as a result of the 10/31/22 Warrant based on a lack of probable cause.

### C. Whether the Delays in Seeking the 9/15/22 and 10/31/22 Warrants Justify Suppression of the Evidence Under *Smith*.

"The right of the police to temporarily seize a person's property pending the issuance of a search warrant presupposes that the police will act with diligence to apply for the warrant." *United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020). There are four "generally relevant" factors to determine "whether the police have waited an unreasonable amount of time before seeking a search warrant:"

> [1] the length of the delay, [2] the importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized item, and [4] the strength of the state's justification for the delay.

*Id.* at 206. The analysis is a "balancing" test, since "this is not an area of Fourth Amendment law that has reduced itself to bright-line rules." *Id.* at 212.

If the four *Smith* factors favor suppression, a court must consider *United States v. Leon*'s good faith exception to the exclusionary rule because "[n]ot every violation of the Fourth Amendment justifies invocation of the exclusionary rule to require suppression of

evidence." *Id.* at 211-12 (noting "the application of the exclusionary rule is not appropriate for constitutional violations that are the product of isolated simple negligence, because exclusion in such circumstances will not result in appreciable deterrence of police misconduct").

**1. Whether the Delay in Obtaining the 9/15/22 Warrant Was Unreasonable.**

**a. Length of the Delay.**

The length of a delay has "independent weight," *Smith*, 967 F.3d at 207, and the *Smith* court held that "a month-long delay well exceeds what is ordinarily reasonable" when law enforcement already knows facts "material to probable cause[.]" *Id.*

Mr. Delima contends that ATF's 75-day delay in applying for the 9/15/22 Warrant after the BPD seized Cell Phones 1 and 2 on July 2, 2022 violated the Fourth Amendment because law enforcement officers, including ATF agents, were involved in the case since its inception. The government agrees that a 75-day delay would be unreasonable under *Smith*, but argues that the court should consider only the time period between when ATF became aware of the cell phones on September 1, 2022 and the date of the warrant, September 15, 2022.[11] The government contends that Agent Brown did not know of the cell phones' existence prior to that date because BPD did not describe their seizure in its narrative reports and because Agent Brown had not reviewed BPD's evidence log.

"Although the ATF agent[s] and the BPD [officers] were not within the same law enforcement agency, they were working together on their investigation of [Mr. Delima.]"

---

[11] The government proposes three different potential timeframes: fourteen days (September 1, 2022 to September 15, 2022), thirteen days (September 1, 2022 to when Agent Brown "likely" submitted the affidavit to the court on September 14, 2022, a day before the warrant was signed), (Doc. 39 at 19 n.3), and nine days (September 1, 2022 to September 14, 2022, including only "working days"). *Id.* at 19. The time period for execution of the warrant is not limited to "working days" nor is there a single accepted definition of a "working day." The government notes *Smith*'s citation of *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) for the proposition that the court could subtract intervening weekends and holidays when calculating delay. "These specific calendar events may be relevant to the analysis, but they do not reduce the total period of time to one that is *per se* constitutionally reasonable under . . . *Smith*." *United States v. Payne*, 2021 WL 9978612, at *13 n.8 (W.D.N.Y. Dec. 29, 2021).

*United States v. Hay*, 2023 WL 142119, at *10 (W.D.N.Y. Jan. 10, 2023). BPD officers and ATF agents are also both law enforcement officers subject to *Smith*. *See Smith*, 967 F.3d at 213 ("[W]e have stated and clarified principles . . . that shall guide *law enforcement officers* with respect to what circumstances establish an unreasonable delay under the Fourth Amendment.") (emphasis supplied). "It makes no difference to the person subjected to a seizure whether state, local, federal, or a combination of various law enforcement officials hold that property once it is seized. The deprivation is the same." *In re Application for Search Warrant*, 527 F. Supp. 3d 179, 184 (D. Conn. 2020) (emphasis omitted).

It also makes no difference that ATF determined it needed BPD's evidence on September 1, 2022 only after it performed testing on the recovered firearm and determined that the case "would in fact go federal[.]" (Tr. at 14.) "Delay is delay, and the effect on the target is the same, whatever or whoever causes that delay." *In re Application for Search Warrant*, 527 F. Supp. 3d at 183; *see also Hay*, 2023 WL 142119, at *11 ("The failed communication between law enforcement agencies working on a joint investigation, such that over 18 months passed before the ATF agent applied for a search warrant, is inexcusable.").

The *Smith* court explained that probable cause is part of the length of the delay analysis because "if the police have probable cause to seize an item in the first place, there is little reason to suppose why they cannot promptly articulate that probable cause in the form of an application to a judge for a search warrant." 967 F.3d at 207. On August 31, 2022, Agent Brown received the NIBIN results matching the recovered firearm's test casings to the recovered shell casings and on September 2, 2022 compared the recovered firearm to the holster. Although these activities contributed to probable cause, "[e]very one of [the] facts [necessary to establish probable cause] was known to [or could have been known by] the police on the same day that the [cell phones] w[ere] seized" on July 2, 2022, and by the time the firearm was recovered on July 13, 2022. *Id.* As a result, no

later than July 13, 2022,[12] BPD and ATF had sufficient information "material to probable cause" to seek the 9/15/22 Warrant. *Id.*

Seventy-five days, the entire timeframe during which both the BPD and ATF retained the cell phones, "well exceeds what is ordinarily reasonable." *Id.* Even if the court considers only the period between July 13, 2022 and September 15, 2022, the time period in question is sixty-four days, and if it subtracts weekends and holidays, the forty-five-day delay would still be unreasonable. *See United States v. Tisdol*, 544 F. Supp. 3d 219, 226 (D. Conn. 2021) (holding thirty-four-day delay unreasonable); *United States v. Wells*, 2023 WL 2223474, at *3 (S.D.N.Y. Feb. 23, 2023) (ruling twenty-nine- and forty-eight-day delays unreasonable); *United States v. Payne*, 2021 WL 9978612, at *13 (W.D.N.Y. Dec. 29, 2021) (finding a twenty-two-day "period of delay was longer than should be expected of a diligent officer"). Indeed, in *United States v. Martin*, 157 F.3d 46 (2d Cir. 1998), the Second Circuit observed that even an eleven-day delay may be unreasonable.

For the reasons stated above, the length of the delay weighs "substantially" in favor of Mr. Delima. *Smith*, 967 F.3d at 207.

**b. Importance of Seized Cell Phones 1 and 2 to Mr. Delima.**

"The second [*Smith*] factor considers the importance of the seized property to the rightful owner of the property and the nature of the property seized." *United States v. Corbett*, 2021 WL 4480626, at *5 (E.D.N.Y. Sept. 30, 2021) (citing *Smith*, 967 F.3d at 207) (internal quotation marks omitted). The *Smith* court recognized "the special concerns that apply when law enforcement seize and search people's personal electronic data and communication devices." 967 F.3d at 207.

> [T]he search and seizure of personal electronic devices like a modern cell phone or tablet computer implicates different privacy and possessory concerns than the search and seizure of a person's ordinary personal effects. Although the district court did not acknowledge or discuss the significance of this distinction, we think it vital to assessing the importance of the seized

[12] As Mr. Delima points out, because law enforcement recovered the holster on July 2, 2022 and the firearm on July 13, 2022, "there is no reason the comparison could not have happened on July 13[.]" (Doc. 30 at 10.)

> property to a defendant when the item in question is a tablet computer or other personal electronic device.

*Id.* at 208. "The sheer volume of data that may be stored on an electronic device . . . raises a significant likelihood that much of the data on the device that has been seized will be deeply personal and have nothing to do with the investigation of criminal activity." *Id.* at 207. In *Smith*, the importance of the seized property did not favor the defendant because: "he had alternative electronic devices that could service the same functions[,]" he "did not request the return of the [device,]" and his "testimony about the use and particular significance of the [device] to him was spare in detail[.]" *Id.* at 208.

In contrast, Mr. Delima asserts he went to BPD on July 5, 2022 and requested the return of his property including Cell Phones 1 and 2. BPD returned his vehicle keys, a lighter, and marijuana but did not return his cell phones. The government contends that "there is no record of his request for his phone[,]" citing Gov't Ex. 12. (Doc. 39 at 20.) The court disagrees.

In a screenshot of BPD's evidence log for Mr. Delima's vehicle keys, lighter, and marijuana, the word "Release" appears in the "Action" drop-down menu and "Remarks" section noting "Hardcopy property log shows item logged out on this date and time by 968." (Gov't Ex. 12.) Cell Phones 1 and 2, in contrast, are accompanied by "Do Not Release" in the "Action" section of the interface. (Gov't Ex. 7a at 23-24.) There is thus a reasonable inference, supported by Mr. Delima's sworn declaration, that he requested the return of all of his property on July 5, 2022 and because of their evidentiary value, the cell phones were not released to him. The court finds his request for the return of Cell Phones 1 and 2 weighs in favor of finding Cell Phones 1 and 2 were important to him.[13]

However, "[w]ithin four days of the seizure," Mr. Delima had obtained Cell Phone

---

[13] Mr. Delima's affidavit explains that "[t]he cell phones were important to [him] because they included contacts for [his] family and friends, as well as photos that were meaningful to [him]." Defendant's Ex. M; *cf. Payne*, 2021 WL 9978612, at *14 (finding the importance of the seized property weighed in favor of the government when a defendant "admitted that the phone was broken and inoperable when it was seized" and did not "submit[] an affidavit establishing the unique importance of this device to him").

3, an alternative communication device.[14] (Doc. 39 at 20.) Ownership of multiple cell phones reduces the significance of any one of them, since cell phones are devices that each "could serve the same function[.]" *Smith*, 967 F.3d at 208; *see also United States v. Green*, 2021 WL 1877236, at *5 (W.D.N.Y. Feb. 3, 2021) (holding that where a defendant possessed numerous cell phones in five days, including three iPhones, "it is difficult to imagine that any one of these devices was uniquely important" to him); *Wells*, 2023 WL 2223474, at *4 (observing that the use of multiple phones "reduces the possibility" that any one was uniquely important to defendant).

The government argues that "[t]he later search of [Cell Phone 3] pursuant to the [10/31/22] [W]arrant showed that the phone [Mr.] Delima activated on July 6, 2022 contained much of the same information found on [Cell Phone 2]" such that "the basis of the phone's importance to [Mr.] Delima—his need for contact information for family and friends and personal photos—was greatly diminished only four days after [its] seizure." (Doc. 45 at 13.) Although Agent Brown averred in his 10/31/22 Warrant affidavit that data transfer from an old phone to a new phone is common, and he believed that information "pertaining to [Mr.] Delima's gun and drug activities prior to his July 2, 2022 encounter with law enforcement" would be on Cell Phone 3, his 10/31/22 affidavit does not identify in any detail information beyond the telephone number and account information that was "ported" to Cell Phone 3.

Notwithstanding his possession of Cell Phone 3, Mr. Delima's request for return of his property and his identification of two important functions of Cell Phones 1 and 2 is not entirely "spare in detail," and weighs in favor of finding the seized property important to him. *Smith*, 967 F.3d at 208.

**c. Reduced Property Interest in Seized Cell Phones 1 and 2.**

The third *Smith* factor addresses whether a defendant "did [any]thing to reduce his

[14] The 10/31/22 Warrant affidavit includes two possible dates for the start of Mr. Delima's Cell Phone 3 use: July 3, 2022, the start-date of Agent Brown's review of Cell Phone 3's call frequency list, and July 6, 2022, the date that the internal AT&T information associated with Cell Phone 3 changed.

property interest by means of consent or voluntarily relinquishing control[,]" *id.*, and whether the item had an "independent evidentiary value," such as "a murder weapon or obvious contraband[.]" *Id.* at 209. The *Smith* court acknowledged that "the existence of probable cause" that that device contained evidence of a crime "had bearing on [defendant]'s possessory interest[,]" *id.* at 208, and may "offset" a defendant's possessory interest in an item, although it is "far from dispositive to deciding the reasonableness of the ensuing delay in seeking a search warrant." *Id.* at 209. In *Smith*, "the existence of probable cause diminished [defendant's] property interest in the [device] for only so long as it was reasonable for the police to wait before obtaining a warrant to search its contents." *Id.*

BPD seized Cell Phones 1 and 2 during a pat-down search of Mr. Delima on July 2, 2022. Mr. Delima "did nothing to reduce his property interest by means of consent or voluntarily relinquishing control of his [cell phones]." *Smith*, 967 F.3d at 208; *cf. Payne*, 2021 WL 9978612, at *14 (seizing a phone with a defendant's consent "greatly diminish[ed] his property interest"). To the contrary, he protested that his detention and arrest were unlawful.

The government asserts that Mr. Delima had a diminished property interest in Cell Phones 1 and 2 because the use of multiple cell phones had "independent evidentiary value" related to trafficking in narcotics. *Smith*, 967 F.3d at 209; *see also Green*, 2021 WL 1877236, at *7 ("[Defendant's] possession of multiple cell phones at one time and six different cell phones over the course of five days is, in and of itself, probative of his involvement in drug trafficking or other illegal activities."). This evidentiary value, however, was minimal in comparison to the cell phones' contents.[15] Cell Phones 1 and 2 were not otherwise contraband, a weapon, or an item that would "retain[] investigative or prosecutorial value regardless of any further search of its contents." *Smith*, 967 F.3d at 209. As with the device in *Smith*, the primary "evidentiary value" of Cell Phones 1 and 2 was "what the police might find from a search of [their] contents." *Id.* This weighs

[15] It is unlikely the government would seek to introduce the cell phones into evidence at trial merely to establish a defendant had multiple cell phones.

against finding the delay in obtaining a search warrant was reasonable.

**d. Justification for the Delay.**

Agent Brown discovered the existence of Cell Phones 1 and 2 on September 1, 2022 when he picked up the evidence from BPD. Prior to that date, he was involved in the investigation of the shooting but had not reviewed BPD's evidence log nor apparently the body camera footage of Mr. Delima's arrest depicting the seizure of the cell phones. BPD's failure to document the cell phones in its narrative reports offers some explanation for ATF's delay.

Mr. Delima argues that the fact that Agent Brown was not aware of the existence of Cell Phones 1 and 2 does not justify the delay in seeking a search warrant because other law enforcement officers who seized them were aware of their significance and had logged them into evidence.

"Under *Smith*, even communication snafus, particularly within the same police department where each detective was aware that the other's investigation utilized crime scene evidence, do not excuse an extended delay." *Tisdol*, 544 F. Supp. 3d at 227 (citation omitted). The *Smith* court explained: "After seizing an item without a warrant, an officer must make it a priority to secure a search warrant that complies with the Fourth Amendment." 967 F3d at 210 (citing *United States v. Burgard*, 675 F.3d 1029, 1035 (7th Cir. 2012)).

The government concedes that "[t]he [9/15/22] affidavit provides no information regarding investigative activities after September 2, 2022. [There were therefore no] unusual reasons [for] the delay beyond . . . agent workloads which have been dismissed by *Smith* and other courts. This factor, therefore, weighs in favor of defendant [Mr.] Delima." (Doc. 39 at 22.)

Because all four *Smith* factors weigh in favor of Mr. Delima to varying degrees, law enforcement's delay in seeking a search warrant for Cell Phones 1 and 2 was "unreasonable in violation of the Fourth Amendment." *Smith*, 967 F.3d at 211. The evidence derived from Cell Phones 1 and 2 pursuant to the 9/15/22 Warrant must therefore be suppressed unless the good faith exception to the exclusionary rule applies.

### 2. Whether the Good Faith Exception to the Exclusionary Rule Applies.

"[T]he exclusionary rule is a judicially-created mechanism of safeguarding against unreasonable searches and seizures—violations of the Fourth Amendment—primarily through its deterrent effect." *Id.* (citing *United States v. Hightower*, 950 F.3d 33, 36 (2d Cir. 2020) (per curiam)). "[T]he exclusionary rule applies only if the police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence." *Id.* The exclusionary rule "appl[ies] not merely in cases of deliberate police misconduct, but also in situations where an officer is 'reckless' or 'grossly negligent' in seeking or executing a warrant." *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015) (citing *Herring v. United States*, 555 U.S. 135, 144 (2009)) (footnote omitted).

> The basic insight of the [*United States v. Leon*, 468 U.S. 897 (1984)] line of cases is that the deterrence benefits of exclusion "var[y] with the culpability of the law enforcement conduct" at issue. When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.

*Davis v. United States*, 564 U.S. 229, 238 (2011) (citing *Herring*, 555 U.S. at 143) (alteration adopted).

The deterrence analysis "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *Smith*, 967 F.3d at 212 (citing *Herring*, 555 U.S. at 145); *see also Davis*, 564 U.S. at 238 (evidence is not excluded "when the police act with an objectively reasonable good-faith belief that their conduct is lawful") (internal quotation marks omitted). "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance[.]" *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992).

The delay in this case was not a product of "systemic or recurring negligence[,]" nor was there "deliberate intent" or "any strategic advantage" in the delay. *Id.* at 212. Law enforcement, however, has been required to obtain a search warrant for a cell

phone's contents since 2014 and thus the need for a search warrant was apparent on July 2, 2022 when Cell Phones 1 and 2 were seized. *See Riley v. California*, 573 U.S. 373, 401 (2014) ("[A] warrant is generally required before such a search, even when a cell phone is seized incident to arrest.").

In *Smith*, decided almost two years before the seizure of Cell Phones 1 and 2, "the Second Circuit explicitly put law enforcement on notice that month-long, unjustified delays [in seeking a search warrant] will no longer be tolerated[.]" *Tisdol*, 544 F. Supp. 3d at 227. In turn, "an objectively reasonable officer in [a BPD officer's or ATF agent's] position" would have known that a sixty-four-day delay or even a forty-five-day delay "amounted to a violation of the Fourth Amendment." *Smith*, 967 F.3d at 212-13; *see also Tisdol*, 544 F. Supp. 3d at 228 (ordering suppression based on a thirty-four-day delay and noting how "*Smith* essentially directed that unreasonably delayed search results caused by police department administrative foibles are unacceptable").

The magistrate judge who issued the 9/15/22 Warrant for Cell Phones 1 and 2 recognized the amount of delay was problematic because he included an addendum that stated as follows: "To the extent that *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020) may be relevant to this Application for a Search Warrant, the undersigned has determined that the matter is more appropriately considered by the presiding District Judge in the event of a federal prosecution." (Gov't Ex. 9 at 13.)

Agent Brown credibly testified that because of "this very case[,]" he now checks a law enforcement agency's evidence log in addition to reading the narrative reports of incidents in which ATF has an investigatory interest. (Tr. at 44.) Although any mistakes law enforcement made in seeking the 9/15/22 Warrant were unintentional, they were also avoidable. *Smith* provided sufficient warning that communication snafus between law enforcement agencies would be unlikely to excuse a lengthy delay.

Because there is an "appreciable deterrent value" in suppressing the evidence from the 9/15/22 Warrant, as it will dissuade law enforcement from future delays, *Smith*, 967 F.3d at 212, the court GRANTS Mr. Delima's motion to suppress the evidence obtained from Cell Phones 1 and 2 pursuant to the 9/15/22 Warrant under *Smith*.

**3. Whether the Delay in Seeking the 10/31/22 Warrant was Unreasonable.**

**a. Length of the Delay.**

After Mr. Delima's arrest on October 14, 2022, the government sought a search warrant on October 31, 2022 to search Cell Phone 3. This delay consisted of seventeen calendar days, and what the government characterizes as eleven "workdays." (Doc. 39 at 23.) Mr. Delima argues the delay was unreasonable because it followed the seventy-five-day delay, and the magistrate judge's inclusion of the addendum to the 9/15/22 Warrant put law enforcement on notice that *Smith* prohibited unreasonable delay.

The *Smith* court cited *Martin* for the proposition that "in some circumstances eleven days might well constitute an unreasonable delay, and we would normally expect police officers to secure a search warrant in considerably less time[.]" 157 F.3d at 54 (internal quotation marks omitted, alteration adopted). It nonetheless held that an eleven-day delay was not unreasonable because the period included "two weekends" and a holiday. *Id.*

On October 27, 2022 Agent Brown received information from AT&T establishing that the telephone number and account information had been transferred from Cell Phone 2 to Cell Phone 3. He averred that "the IMSI (a number used by phone companies to locate a specific phone in the system) changed on July 6, 2022[,]" which was "consistent with law enforcement seizing [Cell Phone 2] on July 2, 2022 and [Mr. Delima] 'porting' the number to [Cell Phone 3.]" (Gov't Ex. 10 at 5, ¶ 9.)

Without information about the porting of the telephone number from Cell Phone 2 to Cell Phone 3, Agent Brown did not have "[e]very fact that was material to probable cause" until October 27, 2022, four days, including a weekend, before he submitted his 10/31/22 Warrant affidavit. *Smith*, 967 F.3d at 207; *see also United States v. Matos*, 2022 WL 17345119, at *4 (W.D.N.Y. Sept. 2, 2022) (holding that "neither a two nor a four day delay is unreasonable when considered with the other factors"). The length of the delay in question was therefore relatively minor, involved critical investigative activities necessary to establish probable cause, and was not "presumptively [un]reasonable."

*Smith*, 967 F.3d at 206. This *Smith* factor thus weighs in favor of the government.[16]

**b. Importance of Seized Cell Phone 3 to Mr. Delima.**

Mr. Delima asserts that Cell Phone 3 contained "a wealth of personal information[,]" but there is no evidence of that information, as there was with Cell Phones 1 and 2. (Doc. 30 at 29; *see* Defendant's Ex. M.) In addition, because Mr. Delima was incarcerated, he would not have access to Cell Phone 3 even if it had not been seized. *See Corbett*, 2021 WL 4480626, at *5 (finding the importance of the seized property favored the government when defendants "ha[d] been incarcerated since their arrests"); *Tisdol*, 544 F. Supp. 3d at 226 ("[T]he importance of this cell phone to [defendant] was diminished at this time because he was incarcerated and would not have been able to access it even if it had not been seized."); *Green*, 2021 WL 1877236, at *6 ("[Defendant's] continued inability to possess or use the cell phones while incarcerated significantly diminishes the importance of their prompt return."); *Payne*, 2021 WL 9978612, at *14 (same).

Although the seizure of Cell Phone 3 implicates the "special concerns" regarding electronic devices, *Smith*, 967 F.3d at 207, the importance of this cell phone to Mr. Delima has not been established. This factor thus also weighs in favor of the government.

**c. Reduced Property Interest in Seized Cell Phone 3.**

Mr. Delima "did not consent to the seizure" of Cell Phone 3 at the time of his second arrest, "[n]or did he consent to a search of its contents[.]" *Id.* at 208. ("This case is unlike those where courts have found that a defendant has a diminished property interest because the defendant or a co-owner consented to the initial seizure, or because the defendant later consented to a search after the property's seizure, or because the property had been otherwise voluntarily relinquished to a third party.") (footnote omitted).

Other than its potential connection to firearms and drug trafficking, Cell Phone 3

---

[16] *See United States v. Kamaldoss*, 2022 WL 1200776, at *16 (E.D.N.Y. Apr. 22, 2022) (reasoning that a fifteen-day delay, including two weekends and involving packages of contraband placed in the mail, "falls somewhere in between the eleven days affirmed in *Martin* and the month-long delay criticized in *Smith*" and "should not weigh against the government").

had no "evidentiary value that would have justified the police's retention" of it "without regard to whether they ever sought a warrant to search" its contents. *Id.* at 209. It was neither a weapon nor contraband and was not in Mr. Delima's possession during the July 2, 2022 shooting incident.

"[T]he existence of probable cause" that Cell Phone 3 contained evidence of narcotics or firearms "ha[s] bearing on [Mr. Delima's] possessory interest[,]" *id.* at 208, because the government "has a stronger interest in seizures made on the basis of probable cause than in those resting only on reasonable suspicion[.]" *Smith*, 967 F.3d at 209 (internal quotation marks and citation omitted). In his supporting affidavit, Agent Brown averred that "[p]ersons who participate in the distribution of controlled substances frequently use cellular telephones," (Gov't Ex. 10 at 7, ¶ 11(e)), and "[i]nformation stored in the memories of [cell phones often] constitutes evidence of drug trafficking." *Id.* at ¶ 11(f). The existence of probable cause "reduced [Mr. Delima's] possessory interest[]" in Cell Phone 3, *Corbett*, 2021 WL 4480626, at *6, but did "not eliminate[]" it. *Tisdol*, 544 F. Supp. 3d at 227. Because this *Smith* factor favors both parties, it is neutral.

**d. Justification for the Delay.**

The government concedes that "[a]s in the prior warrant, the reasons for the minimal delay in this case were attributable to only workload. Given the short delay, while this factor may weigh in favor of the defendant, it is likely neutral." (Doc. 39 at 25.) Notwithstanding the government's concession, some "investigative activity" took place during the period of delay. *Smith*, 967 F.3d at 210.

Four days before seeking the warrant, on October 27, 2022, Agent Brown "reviewed two sets of AT[&]T toll records and subscriber information, some of which were received after [Mr.] Delima's federal arrest." (Gov't Ex. 10 at 4, ¶ 9.) Information regarding the telephone number transfer was essential to the probable cause determination for the 10/31/22 Warrant, because Cell Phone 3 was not in Mr. Delima's possession when he was arrested on July 2, 2022, and its acquisition post-dated his state court charges. *See Corbett*, 2021 WL 4480626, at *7 ("[T]he record shows that during the period between defendants' arrest and the warrant application, the officers continued to

investigate and developed further evidence allegedly indicating that the phones would contain evidence of the defendants' past crimes."). The ongoing investigation activities provided justification for the delay, rendering this *Smith* factor neutral.

On balance, in the case of Cell Phone 3, the length of the delay and the importance of the seized property weigh in favor of the government, while Mr. Delima's property interest and the justification for the delay are neutral. Under *Smith*, the delay in searching Cell Phone 3 was not unreasonable under the Fourth Amendment. Even if it was, the good faith exception to the exclusionary rule would apply because the deterrence afforded by suppression of a cell phone Mr. Delima could not access anyway on the basis of a minor delay is nonexistent. When law enforcement executed the 10/31/22 Warrant for Cell Phone 3, it had no reason to believe it was untimely as the delay in question approximated the delay in *Martin* which the Second Circuit held reasonable. The court thus DENIES Mr. Delima's motion to suppress the evidence obtained from the 10/31/22 Warrant because of unreasonable delay.

**4. Whether the 10/31/22 Warrant is Supported by Probable Cause Without Evidence from the 9/15/22 Warrant.**

Excluding the evidence obtained as a result of the 9/15/22 Warrant, which has been suppressed, the court must determine whether there was probable cause for the 10/31/22 Warrant. The remaining evidence includes all of the evidence regarding Mr. Delima's arrest and the recovery of the firearm and shell casings as well as evidence regarding the transfer of the phone number and account information from Cell Phone 2 to Cell Phone 3.

Mr. Delima's second arrest on October 14, 2022, a day after he had been indicted by a grand jury for drug trafficking and firearms crimes, is also included in the 10/31/22 Warrant affidavit. The affidavit recites the seizure of $1,160 in U.S. Currency found on his person at the time of his arrest. In light of role cell phones play in drug trafficking and the 10/31/22 Warrant affidavit's description of that role, there was a fair probability that evidence of drug trafficking and firearms crimes would be found on Cell Phone 3.

For the foregoing reasons, Mr. Delima's request to suppress the evidence obtained

from the 10/31/22 Warrant for Cell Phone 3 for lack of probable cause is DENIED.

### D. Whether the 2/24/23 Warrant Was Timely Sought.

The government argues that there was no timeliness issue that could justify suppression of the evidence obtained from the 2/24/23 Warrant which authorized a search of Cell Phone 2 for evidence of acquisition or possession of ammunition or firearms. Accordingly, even if the evidence from the 9/15/22 Warrant is suppressed, law enforcement retained Cell Phone 2 as evidence and could seek a warrant to search it.[17] Mr. Delima does not contend otherwise although he challenges the 2/24/23 Warrant on other grounds.

Federal Rule of Criminal Procedure 41(e)(2) provides that law enforcement must "execute [a] warrant within a specified time no longer than 14 days" but states that for electronic devices, this timeframe "refers to the seizure or on-site copying of the media or information, and not to any later off-site copying and review." "This rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant." Fed. R. Crim. P. 41(e)(2) advisory committee's notes. As the government explains, "the Rule now reflects what courts have long concluded, that the forensic review of data need not be completed within the initial 14 days."[18] (Doc. 39 at 29.)

[17] Mr. Delima did not file a motion for return of Cell Phone 2. *See United States v. Nocito*, 64 F.4th 76, 80 (3d Cir. 2023) ("[Fed. R. Crim. P.] 41(g) allows persons 'aggrieved by an unlawful search and seizure or by the deprivation of property' to move the government to return property. Although addressed by the same rule of criminal procedure, motions to suppress and motions to return property serve different and distinct interests: 'Suppression helps ensure that law enforcement personnel adhere to constitutional norms by denying them, and the government they serve, the benefit of property that is unlawfully seized. Rule 41(g) is concerned with those whose property or privacy interests are impaired by the seizure.'") (citation omitted); *Imperial Distribs., Inc. v. United States*, 617 F.2d 892, 895 (1st Cir. 1980) ("Under [Fed. R. Crim. P. 41(e)], if the property is restored, it shall not be admissible in evidence at any hearing or trial.") (internal quotation marks omitted).

[18] *See United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009) ("Because of the nature of this [forensic electronic] evidence, the several months' delay in searching the media did not alter the probable cause analysis."); *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005) ("A delay in execution of the warrant under Rule 41 does not render inadmissible evidence seized, absent a showing of prejudice to the defendants resulting from the delay."); *United States v.*

On September 19, 2022, four days after ATF obtained the 9/15/22 Warrant, an ATF agent sent Cell Phone 2 to ATF's Digital Forensic Branch for "a full [data] extraction[]" because "[a] full data extraction was not possible at the field level[.]" (Gov't Ex. 11 at 3, ¶ 7.) Four months later, on January 19, 2023, ATF's Digital Forensic Branch returned Cell Phone 2 with "a full extraction" to an ATF agent, who provided Agent Brown with a report of Cell Phone 2's contents. *Id.* On February 3, 2023, Agent Brown reviewed the report, viewed the Firearms Photograph, and sought a new search warrant on February 24, 2023 with an expanded date range that encompassed the Firearms Photograph.

Since "'neither Rule 41 nor the Fo[u]rth Amendment impose[s] any time limitation on the government's forensic examination of the evidence seized' pursuant to a validly executed warrant[,]" ATF's forensic review of Cell Phone 2's data was not untimely. *United States v. Alexandre*, 2023 WL 416405, at *18 (S.D.N.Y. Jan. 26, 2023) (citing *United States v. Triumph Cap. Grp.*, 211 F.R.D. 31, 66 (D. Conn. 2002)). Suppression is thus not warranted on that basis.

### E. Whether Mr. Delima is Entitled to Suppression of Evidence from the 2/24/23 Warrant Because ATF Exceeded The Scope of the 9/15/22 Warrant in Obtaining It.

Mr. Delima argues that the 2/24/23 Warrant violated the Fourth Amendment because Agent Brown exceeded the scope of the 9/15/22 Warrant's temporal limitation in obtaining the Firearms Photograph and other evidence, which was then used to provide

---

*Hodges*, 2010 WL 4639238, at *4 (N.D. Ga. Sept. 15, 2010) ("Probable cause did not dissipate during the nearly two-month delay in completing the off-site analysis of the hard drives."); *United States v. Cameron*, 652 F. Supp. 2d 74, 81 (D. Me. 2009) (concluding that "continued forensic inspection" did not violate the Fourth Amendment "[a]bsent any evidence that the delay . . . resulted in a lapse of probable cause, that the delay prejudiced [defendant], or that the delay was in bad faith in an attempt to circumvent the requirements of the search warrant or the law"); *United States v. Triumph Cap. Grp.*, 211 F.R.D. 31, 66 (D. Conn. 2002) ("[T]he warrant authorized an off-site search that could take weeks or months. As long as the time was reasonable under the circumstances, a search of such duration does not violate the Fourth Amendment."); *United States v. Sosa*, 379 F. Supp. 3d 217, 223 (S.D.N.Y. 2019) ("[T]he subsequent extraction of the iPhone data beyond the 14 days set forth in the warrant is entirely consistent with and specifically contemplated by Rule 41.").

probable cause for the 2/24/23 Warrant. The government counters that the Firearms Photograph was in plain view and undated so that even if Agent Brown used the date parameters in his search, the image would remain accessible.

In reviewing the 9/15/22 Warrant data, Agent Brown knew that the image section of Cellebrite "does[] [not] initially sort it by dates[,]" but he did not recall whether he had used the sorting feature to create a date range as required by the warrant's temporal scope. (Tr. at 25.) He testified that he took no other precautions to ensure he was not exceeding the 9/15/22 Warrant's date parameters.

In further disregard of the 9/15/22 Warrant's date parameters, ATF's Digital Forensic Branch "copied the entire phone[,]" (Doc. 30 at 34), and sent ATF Agent Elkstrom "a full extraction of [Cell Phone 2,]" who then "provided [Agent Brown] with a report." (Gov't Ex. 11 at 3, ¶ 7.) *See In re Search of 3817 W. W. End, First Floor Chicago, Illinois 60621*, 321 F. Supp. 2d 953, 959 (N.D. Ill. 2004) ("[C]omputer technology affords a variety of methods by which the government may tailor a search to target on the documents which evidence the alleged criminal activity. These methods include limiting the search by date range[.]").

ATF's Digital Forensic Branch team could have and should have imposed the date-range filter before forwarding the data. *See Tisdol*, 544 F. Supp. 3d at 224 (stating how a Federal Bureau of Investigation digital forensic examiner explained that "once Cellebrite converted [iPhone data] to viewable content, he could have limited the content that he chose to share with the detectives. However, because the warrant authorized a complete extraction without any temporal or data-type restrictions, [he] included the entire viewable contents of the phone in his report to [the detective]"). In failing to do so, the execution of the 9/15/22 Warrant was unlawful.

**F. Whether the Plain View Doctrine Applies.**

"The 'plain view' doctrine is a recognized exception to the Fourth Amendment requirement of a warrant for seizures." *United States v. Delva*, 858 F.3d 135, 149 (2d Cir. 2017). "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Id.* (citing *Horton v. California*, 496 U.S. 128, 133

(1990)) (internal quotation marks omitted). For the plain view doctrine to apply, a law enforcement "officer must lawfully have been in the place from which the object could be seen in plain view." *United States v. Galpin*, 720 F.3d 436, 451 (2d Cir. 2013) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). "[T]he burden of showing that the search fell within [the plain view] exception[] to the warrant requirement is on the government." *United States v. Kiyuyung*, 171 F.3d 78, 83 (2d Cir. 1999).

Agent Brown asserts he saw the Firearms Photograph "in plain view in the image section of the Cell[e]brite Read[er] app[,]" (Gov't Ex. 11 at 5, ¶ 10), without "a date associated with the picture itself[.]" (Tr. at 25.) After investigating further, Agent Brown discovered the photograph was uploaded to Cell Phone 2 on July 25, 2019. The date of uploading clearly indicated it was outside the search warrant's March 1, 2021 to September 15, 2022 parameters. Because Agent Brown was insufficiently familiar with Cellebrite's date-range sorting mechanism, it is not clear that he could have lawfully viewed the Firearms Photograph if it had been used. In such circumstances, the government has not satisfied its burden to establish the Firearms Photograph was in plain view. *See United States v. Wey*, 256 F. Supp. 3d 355, 409-10 (S.D.N.Y. 2017) (holding that the plain view exception did not apply because "the Government here has not developed any evidentiary record that would allow the Court to reach such a conclusion"). The Firearms Photograph and other evidence from the 9/15/22 Warrant must be suppressed unless the good faith exception to the exclusionary rule applies.

**G. Whether the Good Faith Exception Applies to the 9/15/22 Warrant.**

"When an officer genuinely believes that he has obtained a valid warrant from a magistrate judge and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, 'and thus nothing to deter.'" *Raymonda*, 780 F.3d at 118 (citing *Leon*, 468 U.S. at 920-21). "[T]he good faith exception requires a sincerely held and objectively reasonable belief that the warrant is based on a valid application of the law to all the known facts." *United States v. Reilly*, 76 F.3d 1271, 1273 (2d Cir. 1996), *aff'd and amended*, 91 F.3d 331 (2d Cir. 1996) (per curiam). "Good faith is not a blanket excuse for any police behavior. A warrant is not a general hunting license, nor is it a

mantle of omnipotence[.]" *Id.* The good faith exception does not apply:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*Clark*, 638 F.3d at 100 (quoting *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992)). The government contends that these four reasons for excluding evidence are not present, and therefore the good faith exception should apply. In so arguing, it overlooks the fact that "[t]he *Leon* good faith exception will [also] not save an improperly executed warrant." *United States v. Rowland*, 145 F.3d 1194, 1208 n.10 (10th Cir. 1998).

In this case, because ATF exceeded the scope of the 9/15/22 Warrant in both copying the entire cell phone and delivering the entire contents to the investigating agents notwithstanding date parameters that unequivocally limited the data to be searched, the Warrant was not properly executed.[19] Because this was not an unintentional mistake, the good faith exception does not apply. This conclusion is underscored by the delay in seeking the warrant, which was unreasonable under *Smith*. Mr. Delima's motion to suppress the evidence derived from the 9/15/22 Warrant is therefore GRANTED.

### H. Whether the 2/24/23 Warrant Affidavit Established Probable Cause Without the Suppressed Evidence.

Mr. Delima argues that without the unlawfully obtained evidence for the untimely and unlawfully executed 9/15/22 Warrant, the 2/24/23 Warrant affidavit is not supported by probable cause. He does not squarely address whether the 2/24/23 Warrant is timely under *Smith* or whether the government may exceed a search warrant's authorization and then seek a new search warrant for the same or similar evidence. Because at the time of briefing the parties were unaware of the court's decision to suppress the evidence

[19] *See Horton v. California*, 496 U.S. 128, 140 (1990) ("If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more."); *Simon v. City of New York*, 893 F.3d 83, 94 (2d Cir. 2018) ("[B]ecause a warrant generally authorizes no more than what it expressly provides, to act unreasonably beyond the terms of a warrant is akin to acting without a warrant at all.").

obtained from the 9/15/22 Warrant under both *Smith* and because of a violation of its date parameters, the court GRANTS the parties fourteen (14) days to address this issue with supplemental briefing.

**CONCLUSION**

For the foregoing reasons, Mr. Delima's motion to suppress is GRANTED IN PART and DENIED IN PART. (Doc. 30.) The parties are hereby ORDERED to submit supplementary briefing with regard to the 2/24/23 Warrant within fourteen (14) days of the date of this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 9th day of November, 2023.

Christina Reiss, District Judge
United States District Court